IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALEXANDER MCKENZIE, :
         Plaintiff, : 1:15-cv-1590
          :
v. : Hon. John E. Jones III
          :
WARDEN, et al., :
         Defendants. :

# MEMORANDUM
June 9, 2017

Plaintiff Alexander McKenzie ("McKenzie"), a federal inmate who, at all times relevant, was incarcerated at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, commenced this action on August 14, 2015. (Doc. 1). The matter is presently proceeding *via* an Amended Complaint (Doc. 45) filed on September 13, 2016.[1] Named as defendants are the following individuals: Correctional Officer J. Wagner ("Wagner"); Lt. R. Johnson ("Johnson"); Hearing Officer A. Jordan ("Jordan"); Warden J. Thomas ("Thomas"); Captain F. Entzel ("Entzel"); M. Farrow ("Farrow"); J. Eck ("Eck"); J. Rummel ("Rummel"); J. Shovey ("Shovey"); and A. Klose ("Klose").

Pending before the Court is Defendants' motion (Doc. 54) to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b), filed on November 14, 2016. A brief (Doc. 55) in support of the motion was filed on

---

[1] The proposed amended complaint (Doc. 40) was filed on March 22, 2016. The document was accepted for filing on September 13, 2016. (Doc. 44).

November 28, 2016. McKenzie failed to respond or oppose the motion in any manner. On April 13, 2017, the Court ordered him to oppose the motion on or before April 26, 2017. (Doc. 57). On April 24, 2017, he sought an extension of time, which was granted. The Court afforded him until June 1, 2017, to file his brief and cautioned him that his failure to do so would render the motion unopposed. McKenzie has neither opposed the motion nor sought an enlargement of time in which to do so.

For the reasons set forth below, the motion to dismiss will be deemed unopposed and granted.

## I. STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)). A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

## II. ALLEGATIONS OF THE AMENDED COMPLAINT

On May 5, 2014, Defendant Wagner escorted McKenzie and his cellmate, in handcuffs, to a holding area for purposes of conducting a cell search. (Doc. 45, pp. 2, 3, 6). He eventually returned to his cell only to be removed again by Defendants Wagner and Johnson and placed in handcuffs for what he describes as an extended period of time. (*Id.* at 6). Defendant Johnson then allegedly instructed guards to

place McKenzie in restraints and conduct a strip search, all of which McKenzie alleges was recorded with a camcorder. (*Id.*) Defendants Farrow, Eck, Rummel, Shovey and Klose applied the ankle and wrist restraints and belly chain as "tight as possible," causing immediate pain. (*Id.*at 6, 7). He alleges that these actions involved the application of physical force without need or provocation, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment, and constituted the state law tort of assault and battery. (*Id.*) McKenzie alleges that he remained in restraints for over twenty-two hours, that he was placed in a cell with an open window, allowing freezing air to enter, that he was clothed in a "paper outfit," and that he was unable to sleep, eat, or avail himself of basic hygiene functions. (*Id.* at 7, 8).

The following morning, he received an incident report "that guard J. Wagner fabricated to cover up the unjustifiable torturious [sic] act of hard restraints." (*Id.* at 8). He appeared at his disciplinary hearing, over which Defendant Jordan presided. In an effort to prove his account was true, prior to his hearing, has asked his staff representative to review the videotapes of the event. (*Id.*) The staff representative refused. Likewise, at the hearing, the hearing officer allegedly refused to review video recordings of the events. (*Id.*)

## III. **DISCUSSION**

Defendants seek to dismiss the amended complaint on the grounds that McKenzie failed to fully exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust–irrespective of 'special circumstances.'" *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57.

Significantly, "the PLRA contains its own, textual exception to mandatory exhaustion," *i.e.* the PLRA requires exhaustion of "available" administrative remedies. *Id.* at 1858. "Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." *Id.* at 1858-59, (quoting *Booth v. Churner*, 532 U.S. 731, 737-38 (2001)). There are three instances in which administrative remedies are unavailable. "First, as

Booth made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* at 1859. "Next an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Id.* at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). The requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Woodford*, 548 U.S. at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a

6

procedural default analysis to reach the same conclusion). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007).

Finally, whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d. 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 55-1, Declaration of Jennifer Knepper ("Knepper Decl."), ¶4, citing, 28 C.F.R. §542.10 *et seq.*). An inmate must initially attempt to informally resolve the issue with institutional staff. (*Id.* citing 28 C.F.R. § 542.13(a)). If informal resolution fails an inmate may submit a request to the Warden within 20 days of the date on which the basis for the request occurred. (*Id.*, citing 28 C.F.R. § 542.14). An inmate who is dissatisfied with the Warden's response may submit an appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.

(*Id.* citing 28 C.F.R. § 542.15(a)). The Regional Director has 30 calendar days to respond to the appeal. If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office within 30 days of the denial. (*Id.*) Appeal to the Central Office is the final administrative appeal; a decision by the BOP is not final until relief has been denied by the General Counsel's Office. (*Id.* at ¶4). Rejection of an administrative remedy at any level is not a denial of the remedy. (*Id.*). Rather, if a remedy is rejected, it is returned to the inmate and the inmate is provided a written notice explaining the reason for rejection. (*Id.*) Copies of rejected remedies are not maintained by the BOP. (*Id.* citing 28 C.F.R. § 542.17(a)).

"If an inmate reasonably believes his safety would be placed in danger if his request were to become known at the institution, he can file a sensitive remedy directly to the Regional Office." (*Id.* citing 28 C.F.R. § 542.14(d)(1)). If the issue is deemed not to be sensitive, the Regional Office will reject the remedy and instruct the inmate to first seek relief at the institutional level. (*Id.*)

During his incarceration with the BOP, Mckenzie has sought administrative relief fifty-four times. (*Id.* at ¶ 6). The BOP submits the following with respect to the relevant administrative review attempts by McKenzie:

> 7. McKenzie filed Administrative Remedy Identification Number (hereinafter "Remedy No.") 780659-R1 concerning "staff complaints" with the Regional Office as a sensitive remedy on May 20, 2014. The Regional Office rejected the remedy after determining it did not

constitute a sensitive matter and directed McKenzie to file at the institution level. McKenzie refiled Remedy No., 780659-R2 with the Regional Office on June 13, 2014, where it was again rejected.

8. McKenzie appealed Incident Report Number 2579508, which he received for the May 5, 2014 incident, to the Regional Office on June 23, 2014, in Remedy No. 784427-R1. His appeal was rejected as untimely on June 25, 2014, and he was given ten days to re-file his appeal with staff documentation supporting why McKenzie was delayed in filing. McKenzie refiled Remedy No. 784427-R2 with the Regional Office on July 11, 2014, but it was rejected because he still failed to provide staff verification for his untimely filing. He attempted a third time by filing Remedy No. 784427-R3 at the Regional Office on November 19, 2014, but it was again rejected for failing to provide staff verification for his untimely filing.

9. McKenzie again challenged Incident Report 2579508 in Remedy No. 784258-F1, filed at the institution on June 24, 2014. His filing was rejected as it was filed at the wrong level. DHO appeals are filed directly to the Regional Office level. 28 C.F.R. § 542.14(d)(2). McKenzie filed Remedy No. 784258-R1 at the Regional Office on July 3, 2014. His filing was rejected for failing to include a copy of the DHO report and failing to submit the required number of copies of the appeal form. He was given ten days to correct those errors and re-file. McKenzie refiled Remedy No. 784258-R2 at the Regional Office on July 11, 2014, but it was again rejected for failing to include a copy of the DHO report. He was again given ten days to correct the error and refile. McKenzie made a third attempt at filing Remedy No. 784258-R3 on July 28, 2014. His remedy was again rejected for failing to correct his original errors. He was again given ten days to refile with staff verification as to the remedy's untimeliness and he was directed to file one copy of the appeal form and the DHO report. Rather than properly refile at the Regional Office, McKenzie appealed to the Central Office via Remedy No. 784258-A1 on September 3, 2014. His appeal was rejected as filed at the wrong level. McKenzie then filed Remedy No. 784258-R4 for the fourth time at the Regional Office level on November 19, 2014; however, his remedy was again rejected for failing to provide staff verification as to his untimely filing.

9

> 10. McKenzie filed Remedy No. 802234-R1 with the Regional Office on November 19, 2014, as a sensitive staff complaint. That filing was rejected as not qualifying as a sensitive issue and McKenzie was directed to refile at the institution level. To date, McKenzie has not filed any further administrative remedies.

(*Id.* at 7-10).

The record clearly demonstrates that the failure to exhaust squarely rests on McKenzie in that he failed to properly utilize the administrative review process. He sought review in the wrong forum on multiple occasions, filed untimely requests for relief, filed untimely appeals, and ignored opportunities to cure the deficiencies. As noted *supra*, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91. It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 211–212.

McKenzie failed to properly exhaust his administrative remedies as required by the BOP and now his claims are procedurally defaulted. *See Spruill*, 372 F.3d at 232. Accordingly, he is barred from proceeding in federal court.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion (Doc. 54) to dismiss will be deemed unopposed and granted.

A separate order will issue.